C. L. Associates *v.* Board of Supervisors of Montgomery Township. Montgomery Township, Appellant.

Argued April 9, 1980, before Judges MENCER, ROGERS and MACPHAIL, sitting as a panel of three.

*William R. Cooper,* with him *Stewart J. Greenleaf* and *Emory W. Buck,· Cooper* & *Greenleaf,* for appellant.

*Peter F. Baughman, Waters, Gallager, Collins* & *Masterson,* for appellee.

OPINION BY JUDGE ROGERS, June 3, 1980:

The appellee, C. L. Associates, a partnership, owns two adjoining 100 feet wide lots located on the south side of North Wales Road in Montgomery Township, Montgomery County. The lots extend to the rear, or south, by parallel lines a distance of about 207 feet and their combined contents are a little less than an acre. North Wales Road runs in a generally east-west direction and it meets the township's main highway, Route 309, at a point about 400 feet east from the easternmost boundary of the appellee's lots. Route 309 is a four-lane heavily traveled highway which runs in a generally southeast-northwesterly direction so that the area of land bounded on the north by North Wales Road and on the east by Route 309 is in the form of a isosceles triangle. The zoning map of Montgomery Township designates land lying on the west side of Route 309 for a distance of 450 feet from its center line as being within the C-Commercial district. The line dividing the commercial strip along the west side of Route 309 from adjoining residential zoning districts passes through and therefore imposes dual zoning on many properties in its path. Prior to the events of this case this boundary passed through the appellee's tract and bisected it in a manner which placed almost all of the eastern 100 feet wide lot and about one-half of the western 100 feet wide lot or about three-fourths of the total area of both in the C-Commercial zone. The remainder was consigned to the R-2 Residential district where commercial activities are not permitted.

At the point of the isosceles triangle formed by North Wales Road and Route 309 and adjoining the appellee's land to the east is a fast food restaurant; on the south is a motel property fronting on Route 309, the rear wall of a unit of which is located a few feet from, and extends along almost the entire 200 feet length of the south line of the appellee's property. South and southwest of the appellee's land, a distance of about 300 feet, is a large shopping center called Montgomery Mall. This enterprise has frontage, all zoned R-S Regional-Shopping, on both Route 309 and North Wales Road. The North Wales Road frontage of the shopping center presently used only for access roads is 221.5 feet west of the appellee's land and extends to the west for several hundred feet along the south side of North Wales Road at this location and for a greater distance at another location farther west along North Wales Road.

C. L. Associates applied to the Board of the Township Supervisors for a rezoning of their property consisting of the two lots so that all of their area, instead of an approximate three-fourths of it, would be located in the C-Commercial zone. The owner of the property lying immediately to the west of appellee's property, most of whose land was in the R-2 Residential zone, first joined in the appellee's request, asking that his 100 foot wide lot also be rezoned but later expressed a desire to retain his R-2 Residential zoning. The supervisors after hearing, instead of simply granting or denying the appellee the relief sought, decided to rezone its land by redrawing the line marking the boundary of the C-Commercial and the R-2 Residential zoning districts so as to place the appellee's lots wholly in the R-2 Residential zone and enacted an ordinance amending the zoning map to so provide.

The appellee then filed a validity challenge to the map and ordinance with the township Zoning Hearing

Board pursuant to Section 1004(1)(a) of The Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §11004(1)(a), claiming that it was the victim of invalid spot zoning. The Zoning Hearing Board made findings of fact but did not decide the question of the validity of the ordinance, mistakenly believing that it had no power to do so. *See Nicholas, Heim & Kissinger v. Harris Township,* 31 Pa. Commonwealth Ct. 357, 375 A.2d 1383 (1977). The appellee appealed the report of the Zoning Hearing Board to the Court of Common Pleas of Montgomery County which, after argument, sustained the appeal, holding that the ordinance and map invalidly spot zoned the appellee's property and that all of it should be C-Commercial.

We agree with Judge Vincent A. Cirillo who wrote the opinion below that the Act of amending the zoning map by drawing an indentation in the line separating the C-Commercial and R-2 Residential zoning districts tailored to the appellee's property lines and inserting therein the appellee's property as a peninsula of residentially zoned land in a sea of commercial zoning (and uses) was classic spot zoning—that is, it was the creation of "an island [or peninsula[1]] of more or less restricted uses within a district zoned for a different use or uses" and also an act of "singling out ... a small area for different treatment from that accorded to similar surrounding land ... to [the] economic detriment (of the owner)." *Schubach v. Silver,* 461 Pa. 366, 382, 336 A.2d 328, 336 (1975). An examination of the township's zoning map after the amendment reveals no interruption in the perfectly straight lines marking the C-Commercial zoning along Route 309 save that drawn around the appellee's property, although those lines pass through many other properties, large and

---

[1] *See Moyerman v. Koons,* 80 Pa. D. & C. 63 (Del. 1952).

small. Moreover, the township's action might have been successfully attacked as being of that type of special zoning designed to prevent a permitted use on land after application for such use has been made to the municipal authorities. *See Limekiln Golf Course, Inc. v. Zoning Board of Adjustment*, 1 Pa. Commonwealth Ct. 499, 275 A.2d 896 (1971).

The township has made no special objection to the lower court's holding that the approximately 25% of the appellee's land which was located in the R-2 Residential district before the amendment should also be zoned C-Commercial. The appellee made a strong case for its assertion that the zoning scheme existing before the ordinance and map was amended, including the relatively recent massive accommodation of the developers of Montgomery Mall by creating the R-S district, illegally spot zoned its lots and presumably that of its neighbor to the west who joined, but then resigned from, the application to the supervisors for rezoning. We affirm the order as rendered.

Order affirmed.

### Order

AND Now, this 3rd day of June, 1980, the order of the Court of Common Pleas of Montgomery County dated April 26, 1979 is hereby affirmed.